**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RABHA R. ABDELLATIF and EZEQUIEL SOLIS, | |
| Plaintiffs, | |
| v. | Case No. 1:21-cv-03253 |
| AFNI, INC., | |
| Defendant. | |

**COMPLAINT**

**NOW COME** Plaintiffs, RABHA R. ABDELLATIF and EZEQUIEL SOLIS (collectively the "Plaintiffs"), complaining of Defendant, AFNI, INC., as follows:

**NATURE OF THE ACTION**

1. This action is seeking redress for Defendant's violation(s) of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq*.

2. Congress enacted the FDCPA in 1977, 91 Stat. 874, to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers. 15 U.S.C. § 1692(e).

3. The Act regulates interactions between consumer debtors and "debt collector[s]," defined to include any person who "regularly collects … debts owed or due or asserted to be owed or due another." §§ 1692a(5), (6).

4. Among other things, the Act prohibits debt collectors from making false representations as to a debt's character, amount, or legal status, § 1692e(2)(A); communicating with consumers at an "unusual time or place" likely to be inconvenient to the consumer, §

1

1692c(a)(1); or using obscene or profane language or violence of the threat thereof, §§ 1692d(1), (2). *See* generally §§ 1692b-1692j; *Heintz v. Jenkins*, 514 U.S. 291, 292-293, 115 S. Ct. 1489, 131 L. ed. 2d 395 (1995).

5.      The Act is enforced through administrative actions and private lawsuits. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 577, 130 S. Ct. 1605 (2010).

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

7.      Venue in this district is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

8.      RABHA R. ABDELLATIF ("Abdellatif") is a natural person, over 18-years-of-age, who at all times relevant resided at 805 Reed Court, Addison, Illinois 60101-1698.

9.      Abdellatif is a "consumer" as defined by 15 U.S.C. § 1692a(3).

10.     EZEQUIEL SOLIS ("Solis") is a natural person, over 18-years-of-age, who at all times relevant resided at 3316 South 58th Court, Cicero, Illinois 60804-3814.

11.     Solis is a "consumer" as defined by 15 U.S.C. § 1692a(3).

12.     AFNI, INC. ("Defendant") is a corporation organized and existing under the laws of the state of Illinois.

13.     Defendant maintains a principal place of business at 1310 Martin Luther King Drive, Bloomington, Illinois 61702-3517.

14.     Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6).[1]

---

[1] Get to Know Us Better.  Afni is a global team of people passionate about helping brands develop meaningful and profitable relationships with their customers.  It was in 1936 when we got our start as a consumer collections agency in Bloomington, Illinois. Today, we're so much more. Our channel strategies and customer lifecycle solutions give our clients different ways to connect with their customers for many reasons. Our contact center teams know what it takes to get the results your business needs. We're ready to prove it to you. https://afni.com/about (last accessed June 17, 2021)

15.    Defendant uses instrumentalities of interstate commerce and the mail in its business – the principal purpose of which is the collection of debt owed or due or asserted to be owed or due another.

## FACTUAL ALLEGATIONS

### *Allegations as to Rabha R. Abdellatif*

16.    Abdellatif entered into a wireless services contract with Sprint.

17.    Abdellatif did not pay the phone bills—causing Sprint to cancel her service.

18.    Following termination, Abdellatif's $181.04 account balance remained unsettled.

19.    Abdellatif's $181.04 account balance is a "debt" as defined by 15 U.S.C. § 1692a(5).

20.    Abdellatif's $181.04 account balance referred for collection.

21.    Defendant communicated with Abdellatif regarding this debt using a third-party commercial letter vendor.

22.    Upon information and belief, Defendant electronically transmitted to said vendor certain information about Abdellatif, including, among other things: (1) her status as a debtor; (2) the exact balance of her debt; (3) the entity to which she owed the debt; and (4) that the debt concerned Abdellatif's Sprint account.

23.    Defendant's third-party letter vendor used this information to generate and mail Abdellatif a letter, dated March 8, 2021 (the "March 8, 2021 Letter").

24.    The March 8, 2021 Letter contained highly sensitive and personal information related to Abdellatif, including: (1) Abdellatif's name and address; (2) that Abdellatif owed a debt; (3) the entity to which Abdellatif owed the debt; (4) the exact balance of Abdellatif's debt; (5) that Abdellatif's debt was in default; and (6) that Abdellatif's debt was being collected by a debt collector.  *See* Exhibit A.

*Allegations as to Ezequiel Solis*

25.     Solis entered into a wireless services contract with Verizon Wireless ("Verizon").

26.     Solis did not pay the phone bills—causing Verizon to cancel his service.

27.     Following termination, Solis's $3,393.29 account balance remained unsettled.

28.     Solis's $3,393.29 account balance is a "debt" as defined by 15 U.S.C. § 1692a(5).

29.     Solis's $3,393.29 account balance referred for collection.

30.     Defendant communicated with Solis regarding this debt using a third-party commercial letter vendor.

31.     Upon information and belief, Defendant electronically transmitted to said vendor certain information about Solis, including, among other things: (1) his status as a debtor; (2) the exact balance of his debt; (3) the entity to which he owed the debt; and (4) that the debt concerned Solis's Verizon account.

32.     Defendant's third-party letter vendor used this information to generate and mail Solis a letter, dated April 12, 2021 (the "April 12, 2021 Letter").

33.     The April 12, 2021 Letter contained highly sensitive and personal information related to Solis, including: (1) Solis's name and address; (2) that Solis owed a debt; (3) the entity to which Solis owed the debt; (4) the exact balance of Solis's debt; (5) that Solis's debt was in default; and (6) that Solis's debt was being collected by a debt collector.  *See* Exhibit B.

## ARTICLE III STANDING

34.     "[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," such that "a plaintiff … need not allege any additional harm beyond the one Congress has identified."  *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1549, 194 L.3d 2d 635 (2016).

4

35.     *Spokeo* instructs that in determining whether a statutory violation confers Article III standing, we should consider "history and the judgment of Congress." *Id*.

36.     Starting with history, we can discern a concrete injury where "intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id*.

37.     Put differently, we look to "whether the statutory violation at issue led to a type of harm that has historically been recognized as actionable." *Muransky v. Godiva Chocolatier, Inc*., 979 F.3d 917, 926 (11th Cir. 2020) (en banc).

38.     *Muransky* explains that the "fit between a new statute and a pedigreed common-law cause of action need not be perfect, but we are called to consider at a minimum whether the harms matchup between the two." *Id*.

39.     For more than a century, invasions of personal privacy have been regarded as a valid basis for tort suits in American courts. *See, e.g., Pavesich v. New England Life Ins. Co*., 122 Ga. 190, 50 S.E. 68 (1905); *Munden v. Harris*, 153 Mo. App. 652, 134 S.W. 1076 (1911); *Kunz v. Allen*, 102 Kan. 883, 172 P. 532 (1918).

40.     By 1977, the Restatement (Second) noted that "the existence of a right of privacy is now recognized in the great majority of the American jurisdictions that have considered the question." *Restatement (Second) of Torts* § 652A cmt. a. (Am. Law Inst. 1977).

41.     More particularly, the term "invasion of privacy" comprises an identifiable family of common-law torts—including, most relevantly here, "public disclosure of private facts." *Invasion of Privacy*, Black's Law Dictionary 952 (10th ed. 2014).

42.     It is hornbook law that "[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized

5

is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *Restatement (Second) of Torts* § 652D (1977); *accord, e.g.*, 77 C.J.S. Right of Privacy and Publicity § 32; 62A Am. Jur. 2d Privacy § 79.

43. Indeed, the Supreme Court itself has recognized "the individual interest in avoiding disclosure of personal matters" and has recognized that "both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person." *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763, 109 S. Ct. 1468, 103 L. Ed. 2d 774 (1989).

44. Having established the historical pedigree of invasion-of-privacy torts—in particular, the sub-species applicable to the public disclosure of private facts—we next consider whether Defendant's alleged statutory violation is sufficiently analogous.

45. Notably, the FDCPA's statutory findings explicitly identify "invasions of individual privacy" as one of the harms against which the statute is directed. 15 U.S.C. § 1692(a).

46. And to that end, the statutory provision under which Plaintiff has sued here expressly prohibits a debt collector from "communicat[ing]" with any but a few persons or entities "in connection with the collection of any debt." *Id*. § 1692c(b).

47. Although § 1692c(b) isn't identical in all respects to the invasion-of-privacy tort, we have no difficulty concluding that it bears "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549.

48. Although it presents a closer question, we conclude that "the judgment of Congress" also favors Plaintiffs.

49.     Congress, of course, expresses its "judgment" in only one way—through the text of duly enacted statutes.

50.     Even assuming that § 1692c(b) does not clearly enough express Congress's judgment that injuries of the sort that Plaintiff alleges are actionable, here Congress went further to "explain itself." *Huff v. Telecheck Servs.*, 923 F.3d 458, 466 (6th Cir. 2019).

51.     In particular, as already noted, in a section of the FDCPA titled "Congressional findings and declaration of purpose," Congress identified the "invasion[] of individual privacy" as one of the harms against which the statute is directed. 15 U.S.C. § 1692(a).

52.     Because (1) § 1692c(b) bears a close relationship to a harm that American courts have long recognized as cognizable and (2) Congress's judgment indicates that violations of §1692c(b) constitute a concrete injury, Plaintiffs have the requisite standing to sue.

## CLAIMS FOR RELIEF

### COUNT I:
### Fair Debt Collection Practices Act—15 U.S.C. § 1692 *et seq.*

53.     All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

### Violation of 15 U.S.C. § 1692c

54.     Section 1692c(b) states that, subject to several exceptions, "a debt collector may not communicate, in connection with the collection of any debt," with anyone other than the consumer.  15 U.S.C. §1692c(b).

55.     Defendant's transmittal of Plaintiffs' personal information to Defendant's third-party letter vendor constitutes a "communication" as defined by 15 U.S.C. § 1692a(2).

56.     Defendant's communication with their third-party letter vendor was in connection with the collection of Plaintiffs' past due account balances.

7

57.     Specifically, Defendant's transmittal to their third-party letter vendor included specific details regarding Plaintiffs' debts: Plaintiffs' status as a debtor, the precise amount of Plaintiffs' debts, the entity to which the debts were owed, and the fact that the debts concerned Plaintiffs' Sprint and Verizon accounts, respectively, among other things, such that it violates § 1692c(b).

58.     Plaintiffs may enforce the provisions of 15 U.S.C. § 1692c(b) pursuant to section k of the FDCPA (15 U.S.C. § 1692k) which provides "any debt collector who fails to comply with any provision of [the FDCPA] with respect to any person is liable to such person in an amount equal to the sum of -

    (1)    any actual damage sustained by such person as a result of such failure;

    (2)

        (A)    in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000.00; or

    (3)    in the case of any successful action to enforce the foregoing liability, the costs of the action, together with reasonable attorney's fees as determined by the court.

**WHEREFORE**, Plaintiffs request the following relief:

A.     a finding that Defendant violated 15 U.S.C. § 1692c(b);

B.     an award of any actual damages sustained by Plaintiffs as a result of Defendant' violation(s);

C.     an award of such additional damages, as the Court may allow, but not exceeding $1,000.00;

D.     an award of costs of this action, together with reasonable attorney's fees as determined by this Court; and

8

E.      an award of such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

DATED: June 17, 2021                          Respectfully submitted,

**RABHA R. ABDELLATIF and
EZEQUIEL SOLIS**

By: */s/ Joseph S. Davidson*

Joseph S. Davidson
LAW OFFICES OF JOSEPH P. DOYLE LLC
105 South Roselle Road., Suite 203
Schaumburg, Illinois 60193
+1 847-985-1100
jdavidson@fightbills.com